ARKANSAS STATE BOARD OF NURSING
*v.* Ina LONG

CA 82-345                                    651 S.W.2d 109

Court of Appeals of Arkansas
Opinion delivered June 1, 1983

*Steve Clark,* Atty. Gen., by: *Robert L. Waldrum,* Asst. Atty. Gen., for appellant.

*Dodds, Kidd, Ryan & Moore,* by: *Judson C. Kidd,* for appellee.

DONALD L. CORBIN, Judge. Appellant, Arkansas State Board of Nursing, charged Ina Long, appellee, a registered nurse, with violating Ark. Stat. Ann. § 72-760 (a) (3) & (6) (Repl. 1979) of the Nurse Practice Act, which authorizes disciplinary action for negligence and unprofessional conduct respectively. An adjudicatory hearing on these charges was held before the Board pursuant to the Arkansas Administrative Procedure Act. Ark. Stat. Ann. § 5-701, *et seq.* (Repl. 1976). The Board found that appellee had violated the Nurse Practice Act as charged and ordered her nursing license to be suspended for one year. Appellee appealed this decision to the Pulaski County Circuit Court, Fifth Division, pursuant to Ark. Stat. Ann. § 5-713 (a). The trial court reversed the Board's decision. We affirm.

The Board contended that appellee in her capacity as administrator of Hillhaven Nursing Home was guilty of negligence and unprofessional conduct in authorizing her housekeeping staff to wax the floor leading to rooms containing twenty-four skilled care patients in such a way as to prevent any access to those patients for approximately one to one and one-half hours. Skilled care patients are those who cannot care for themselves at all. The Board also alleged that appellee failed to take adequate corrective action to give her nursing staff access to the patients. During the period of time that the waxing took place, eighty-one year old Ruth Hays, a patient in the skilled care section of Hillhaven Nursing Home died while restrained in her turned over wheelchair.

As administrator of Hillhaven Nursing Home, appellee oversaw the nursing and housekeeping staff. Appellee supervised Donna Hughes, Director of Nursing and Stella Morris, Housekeeping Director.

Stella Morris had authority over housekeeping matters, and she decided on May 28, 1982, that the floors on the skilled care unit of the fourth floor should be waxed. It was

292

her decision to do it during the shift change. Ms. Morris approached appellee to inform her that she and her crew would be waxing one end of the fourth floor that day. When she spoke to appellee, appellee was on the phone and appellee merely assented to her statement. There was no testimony at the hearing as to the exact time this occurred. The record reveals that appellee did not order Stella Morris to wax the floor nor did she tell her how to do it. The finding of the Board of Nursing to that effect was incorrect.

Ms. Morris and her aide, Mr. Humphrey, began waxing the fourth floor where the skilled care patients resided. After it became apparent to some nurses that the whole floor was being waxed rather than part of it, they voiced their objections to Ms. Morris. Ms. Morris told only one nurse, Patsy Tilley, that the floor was being waxed on orders from appellee and that those who walked on the floor would be "written up" but she testified that she only made that statement to nurse Tilley because nurse Tilley "just wanted to be kind of smart about it." She testified that she was not doing it on orders from appellee because it was her own decision, and she had merely told appellee about it in advance. Ms. Morris testified that her department waxed different ways at different times and that a shift change could be a logical time to wax because patients were checked right at shift change.

The nurses who objected to this method of floor waxing admitted that they did not object directly to appellee until quite some time later. Appellee testified that while waxing apparently started a little after 3:00 p.m. that day, no one voiced an objection to her until just before 4:00 p.m. when she went to Donna Hughes' office, the Director of Nursing. As soon as appellee did learn about it, she went to the fourth floor and checked on the waxing. When she got there, the wax had already been laid and was nearly dry. She testified that she talked with Ms. Morris and Mr. Humphrey and told them that they should no longer wax the whole hall at once — thereafter it should be done half at a time. No nurse discussed it with her then. She went back to her office and ten minutes later she received the stat call for Mrs. Hays.

Donna Hughes, the Director of Nursing, also was

charged in this matter, but appellant Board of Nursing dropped the charges against her in exchange for her testimony against appellee. She testified that she knew about the waxing before it occurred, but she admitted that she did not tell appellee her concerns over the fact that the waxing would keep nurses from their patients until the meeting in her office. She testified that when she learned about the waxing, she called nurse Connie Smart on the fourth floor and asked her to check the patients before the waxing began. She never testified to a specific time when she and appellee talked. Also, no objections were made to Ms. Hughes until sometime later when she went to the fourth floor and talked to the nurses.

Judicial review of administrative findings is governed by our Administrative Procedure Act, Ark. Stat. Ann. § 5-713 (Supp. 1981) which provides in part:

> (g) The review shall be conducted by the court without a jury and shall be confined to the record, except that in cases of alleged irregularities in procedure before the agency, not shown in the record, testimony may be taken before the court. The court shall, upon request, hear oral argument and receive written briefs.
>
> (h) The court may affirm the decision of the agency or remand the case for further proceedings. It may reverse or modify the decision if the substantial rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
> (1) in violation of constitutional or statutory provisions;
> (2) in excess of the agency's statutory authority;
> (3) made upon unlawful procedure;
> (4) affected by other error of law;
> (5) not supported by substantial evidence of record; or
> (6) arbitrary, capricious, or characterized by abuse of discretion.

Upon judicial review of administrative decisions, we must review the entire record and determine whether there is substantial evidence to support the administrative findings.

*Snyder* v. *Alcoholic Beverage Control Board*, 1 Ark. App. 92, 613 S.W.2d 126 (1981). Substantial evidence is evidence which is valid, legal and persuasive and such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Partlow* v. *Arkansas State Police Commission*, 271 Ark. 351, 609 S.W.2d 23 (1980). Before a decision of the Board may be reversed on appeal, it must appear that fair-minded persons with the facts before them, could not have reached the conclusion arrived at by the Board. See, *Office of Emergency Services* v. *Home Ins. Co.*, 2 Ark. App. 185, 618 S.W.2d 573 (1981).

A review of agency action under our arbitrary and capricious standard is a narrow scope of review. To have administrative action set aside as arbitrary and capricious, the party challenging the action must prove that it was "willful and unreasoning action," without consideration and with a disregard of the facts or circumstances of the case. *White Co. Guaranty Savings and Loan* v. *Farmers & Merchants Bank*, 262 Ark. 893, 562 S.W.2d 582 (1978).

The United States Supreme Court held in *Bowman Transportation, Inc.* v. *Arkansas-Best Freight System, Inc.*, 419 U.S. 281 (1974), that though an agency finding may be supported by substantial evidence it may nonetheless reflect arbitrary and capricious action.

The record reflects that when appellee was made aware that the entire floor was being waxed, she promptly checked on the situation and made an immediate policy change to the effect that only half a floor should be waxed at any given time. At best, the record indicates the passage of a maximum of fifteen minutes from notice to appellee of the problem, her checking it, implementing a corrective policy for the future and the discovery of the unfortunate death of Mrs. Hays. We find no substantial evidence to support the Board's decision that appellee's conduct constituted negligent and unprofessional nursing judgment.

Appellant contends that the trial court erred by denying its motion to reconsider the judgment or in the alternative to disqualify and transfer because of alleged prejudicial remarks made by the court during the final hearing. Some of

the comments made by the court which appellant found objectionable were:

> Now, I was amazed as I read the record because these nurses who comprise the Board of Nursing quickly turned what was supposed to be a hearing into what appeared to be an inquisition. They did more cross-examining than the lawyers. And they cross-examined on every area of nursing that they could think of. I suppose to try and show their expertise in all areas of nursing such as the types of restraints that were being used, the types of C.P.R. equipment that were there et cetera, et cetera, ad nauseum.

A judge's reaction to what happens in a case based on an observation of the proceedings is not a ground to disqualify. *United States* v. *Grinnell Corp.*, 384 U.S. 563 (1966). This is particularly so when the court sits without a jury. As stated in 48A C.J.S. *Judges* § 110 (1981):

> A judge is not disqualified merely because he believes in upholding the law, even though he says so with vehemence. He may not be disqualified for judicial bias, and judicial knowledge properly acquired is not a sufficient basis for disqualification. So, bias or prejudice acquired in the course of pending proceedings, such as one based on actual observance of witnesses and on the evidence given during the trial, is not bias or prejudice which disqualified a judge from acting in such proceedings.

We find no prejudice gained extrajudicially in the instant case. If the court was prejudiced, such prejudice was gained by the performance of his judicial responsibility in reading the record of the Board's adjudicatory hearing. He made his findings based upon the record he had before him and we agree with his decision.

We find no error in the reviewing court allowing the deposition of Dr. Susan W. Baker, Mrs. Hays' physician, to be received as evidence. The Attorney General objected to its introduction at the adjudicatory hearing because it was taken five days earlier in a related proceeding initiated by the Attorney General and because the same interests were not

represented in the other proceeding. Appellant made no claim of privilege. Appellee had offered Dr. Baker's deposition into evidence at the adjudicatory hearing because Dr. Baker was unavailable to testify. The reviewing court found the deposition probative since the hearing consisted in part of an in-depth examination by Board members as to why C.P.R. was not given to Mrs. Hays after she was found dead. Although the Attorney General stated prior to the hearing that the failure to give C.P.R. was not at issue, this was one of the findings of the Board utilized to bolster their charge of neglect and unprofessional conduct.

Hearsay evidence is normally admissible in administrative proceedings if it is reliable and probative. *Rocker* v. *Celebrezze,* 358 F.2d 119 (2d Cir. 1966). In *Arkansas Public Service Commission* v. *Continental Telephone Co.,* 262 Ark. 821, 561 S.W.2d 645 (1978), the Arkansas Supreme Court held that hearsay was admissible in an administrative proceeding and should have been admitted saying:

> Where reliance is placed by an administrative agency upon testimony of certain witnesses in making a critical factual determination, it will be an abuse of discretion to fail to hear material evidence which might impeach, not only the testimony, but the findings made by the agency as well. *National Labor Relations Board* v. *Indiana & Michigan Electric Co.,* 318 U.S. 9, 63 S. Ct. 394, 87 L.Ed. 579 (1943). The more liberal the practice in admitting testimony, the more imperative is the obligation to preserve the essential rules by which rights are asserted or defended. *Interstate Commerce Com'n.* v. *Louisville & N.R. Co., supra; Alabama Power co.* v. *Fort Payne, supra.*

An agency should receive all evidence which is competent, relevant, and material, regardless of the weight it must be given. *Donnelly Garment Co.* v. *N.L.R.B.,* 123 F.2d 215 (8th Cir. 1941). The refusal to admit relevant evidence itself can amount to a denial of due process. *Russell-Newman Mfg. Co.* v. *N.L.R.B.,* 370 F.2d 980 (5th Cir. 1966). The agency cannot arbitrarily exclude evidence. *National Airlines, Inc.* v. *C.A.B.,* 116 U.S.App.D.C. 114, 321 F.2d 380 (1963).

The doctor's deposition completely refuted one of the ultimate findings by the Board of negligence and unprofessionalism in their justification for suspending appellee's license. It was relevant and probative and should have been considered by the Board. We find no error here.

Affirmed.